## AYRES v. VILLAGE OF HAMMONDSPORT.

*(Supreme Court, General Term, Fifth Department.* October 19, 1889.)

MUNICIPAL CORPORATIONS—NEGLIGENCE—ICY STREETS.

    In an action for personal injuries resulting from the negligent construction and maintenance of a sidewalk, and suffering ice to accumulate thereon, it was shown that the sidewalk in front of a certain building had a greater slant towards the street than it had elsewhere, and a part of it had settled so that water ran towards the end of the walk, where ice frequently accumulated, while the walk was otherwise dry; and it was recognized by residents as a dangerous spot. Nothing was disclosed that should have put plaintiff on his guard as to the danger, and he did not see the ice until he slipped and fell. *Held,* that a verdict for plaintiff was warranted.

Appeal from circuit court, Stueben county.

Action by Romeyn B. Ayres against the village of Hammondsport. De-

fendant appeals from a judgment on a verdict for plaintiff and from an or-
der denying a motion for a new trial upon the minutes.

Argued before BARKER, P. J., and MACOMBER, J.

*James H. Stevens, Jr.,* for appellant. *J. F. Parkhurst,* for respondent.

MACOMBER, J. A subtle attempt has been made in the argument in be-
half of the appellant to bring this case within the decision of *Taylor* v. *City
of Yonkers,* 105 N. Y. 202, 11 N. E. Rep. 642. The facts, however, dis-
closed upon the trial, do not, in our judgment, make applicable this and other
like authorities. The action is to recover damages for personal injuries re-
sulting from negligent construction and maintenance of a sidewalk in the
village of Hammondsport, and the negligent suffering of ice to accumulate
and remain thereon so as to render it unsafe for public travel. The place of
the accident was on Sheather street, running east and west through the vil-
lage, and at a point by the St. James Hotel, the southerly line of the side-
walk being the front wall of the hotel building. The sidewalk in front of
the hotel was ten feet and two inches wide, though the other portion of the
walk west of the hotel was only about four feet wide. There were two ir-
regular steps in the sidewalk by the east end of the hotel. In traveling east-
ward the first step down was to a tread of thirteen and one-half inches wide
and seven feet seven inches long, and the distance down to the next tread
was four inches to a tread which was three feet wide and seven feet seven
inches long, and the distance down from that tread to the level of the adjoin-
ing building, known as the "Beck Building," was eight inches. The pitch
or grade of the sidewalk by the hotel was much greater than that of the rest
of the street. While the walk westerly of the hotel had generally only the
usual pitch towards the street of about one inch in three feet, and about the
same pitch at the westerly end and front of the hotel, there was a slope of
seven inches at the westerly part of the walk in front of the hotel, where some
of the witness say the walk gradually tilted down. The hotel had a mansard
roof without eave-troughs, and the drip was directly upon the sidewalk. The
easterly portion of the sidewalk had so settled as to cause a crack in it down
the center of the hotel, making the east side lower than the west, so that both
from the settling and the gradual tilting of the walk towards the east the
tendency of the dripping water was towards the easterly end of the walk
where the steps were. Ice frequently accumulated at this point when the
walk was otherwise dry. A ridge of ice had formed from the drip two or three
feet from the wall, and pedestrians naturally crowded towards the building
on account of the slope in the walk. There was much evidence given to the
effect that the walk had been covered with thick ice, in some places ridged,
for a period of three or four weeks preceding the injuries. The place seems
to have been generally recognized by the residents as a dangerous spot. At
the spot where the plaintiff fell, which was the easterly plank of the St. James
walk, a little to the right of the middle of the plank, the walk had a slope, as
some witnesses say, of about eleven inches when the accumulation of the ice
is added to the slant of the walk itself. Other testimony showed that the ac-
cumulation of ice was greater towards the middle than at the edge, for near
the outer edge the same had been worn or melted off. The whole of this
place was smooth. The plaintiff, while walking towards the place, did not
discover that there was any ice on the walk until he was near the steps, when
his foot slipped towards the street. There is no fact disclosed that put him
especially upon his guard as to this dangerous place in the sidewalk; indeed,
he seems to have been ignorant of its actual condition until the instant of re-
ceiving the injuries.

These facts, which were established by the evidence adduced in behalf of
the plaintiff, rendered it incumbent upon the court to submit the whole ques-
tion of the liability of the village, as well as the alleged contributing negli-

gence of the plaintiff, to the consideration of the jury. Their verdict, being supported, as it is, by a clear preponderance of the evidence, cannot be disturbed by us.

We have examined the several exceptions taken·by the defendant during the trial, and find in none of them any matter which would justify us in sending the case back for another trial. The judgment and order should be affirmed.